21-999-cv
Zachman v. Hudson Valley Federal Credit Union

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued: March 16, 2022                    Decided: September 14, 2022)

Docket No. 21-999-cv

_____

NICOLE ZACHMAN, ON BEHALF OF HERSELF AND ALL OTHERS
SIMILARLY SITUATED,

*Plaintiff-Appellee*,

v.

HUDSON VALLEY FEDERAL CREDIT UNION,

*Defendant-Appellant*.

_____

Before: POOLER, WESLEY, and MENASHI, *Circuit Judges*.

Appeal from United States District Court for the Southern District of New

York (Vincent L. Briccetti, *J*.) denying defendant Hudson Valley Federal Credit

Union's ("HVCU") motion to compel arbitration. Because the record was

insufficiently developed for the district court to deny the motion to compel arbitration, we vacate and remand for further proceedings consistent with this opinion.

Vacated and remanded.

_____

JAMES R. BRANIT, Litchfield Cavo LLP (Brian S. Gitnik, Keith L. Gibson, *on the brief*), New York, N.Y., *for Defendant-Appellant Hudson Valley Federal Credit Union.*

SOPHIA GOREN GOLD, Kaliel Gold PLLC, Washington, D.C., *for Plaintiff-Appellee Nicole Zachman.*

SUE J. NAM, Reese LLP, (*on the brief*), New York, N.Y. *for Plaintiff-Appellee Nicole Zachman.*

POOLER, *Circuit Judge*:

Hudson Valley Federal Credit Union ("HVCU") appeals from the judgment of the United States District Court for the Southern District of New York (Briccetti, *J.*) denying HVCU's motion to compel arbitration of Nicole Zachman's putative class action claims for breach of contract, breach of the covenant of good faith and fair dealing, and claims under New York law and the federal Electronic Fund Transfer Act.

Zachman alleged that HVCU wrongly assessed and collected overdraft fees and insufficient funds fees on checking accounts that were not actually overdrawn. As relevant to this appeal, HVCU moved to compel arbitration on the basis that Zachman was bound by a mandatory arbitration clause and class action waiver provision in the Truth-in-Savings Standard Disclosure and Account Agreement ("Account Agreement"). Zachman contends that when she opened her account with HVCU in 2012, the Account Agreement did not contain any mandatory arbitration clauses or class action waiver provisions, and that because she was never notified of the addition of those provisions to the Account Agreement, she is not bound by them.

HVCU argued below that Zachman was on inquiry notice of the modified Account Agreement. It contended that when Zachman signed up for online banking with HVCU in 2019, she agreed to an Internet Banking Agreement that incorporated by reference the revised Account Agreement containing the arbitration and class action waiver provisions; and that HVCU published the

3

modified Account Agreement on the HVCU website which Zachman used for online banking.[1]

The district court agreed with Zachman, finding that she was not on actual or inquiry notice of the terms of the mandatory arbitration clause or class action waiver provisions. It denied HVCU's motion to compel arbitration. We conclude that the district court erred in engaging in the inquiry notice analysis, which requires an examination of the "design and content" of the webpage, without reviewing the actual screenshots of the web-based contract. Therefore, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

**BACKGROUND**

**A.    Facts**

HVCU is a not-for-profit credit cooperative and financial institution that provides checking account services and other financial products to its members.

---

[1] On appeal, HVCU has abandoned its argument that Zachman was on notice of the Account Agreement because it was published on HVCU's website.

Zachman is an active member of HVCU, where she maintains a checking account and debit card.

On February 21, 2020, Zachman filed a class-action complaint, alleging that HVCU's practice of collecting overdraft or insufficient funds fees on accounts that were not actually overdrawn violated New York General Business Law § 349 and the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*, and its implementing regulation, known as Regulation E, 12 C.F.R. § 1005. In response, HVCU moved to dismiss the complaint, which the district court construed as a motion to compel arbitration. The district court ordered limited arbitration-related discovery for the purpose of deciding the motion.

Joyce Keehan, HVCU's senior compliance officer, testified that the modified Account Agreement containing the arbitration provision and class action waiver was published to the HVCU website. HVCU customers can access the agreement via the HVCU website in two ways: 1) a user may run a search in the website's search bar which will bring up the Account Disclosures webpage with a hyperlink to the account agreement; or 2) a user can reach the Account Disclosures webpage by selecting the "Resources" tab on the right-side of an

options menu on HVCU's website. App'x at 260-61. Keehan also testified that users can obtain a physical copy by either requesting a hard copy be mailed to them or going to a brick-and-mortar HVCU branch.

Keehan testified that she was not aware whether HVCU mailed or emailed Zachman a copy of the revised Account Agreement containing the mandatory arbitration and class action waiver provisions. HVCU did not post a notice of the added arbitration and class action waiver provisions in its quarterly newsletters or in members' electronic statements, and it did not otherwise provide written notice of those provisions to Zachman. Keehan acknowledged that the "only way that [HVCU] provided notice of the arbitration provision and class action waiver was by posting the new agreement that contained the arbitration provision and class action waiver to its website." App'x at 257. Additionally, HVCU did not implement a "banner" notification on the webpage, provide a summary of any changes made to the Account Agreement on the webpage where the agreement is hyperlinked, or otherwise indicate any changes had been made to the Account Agreement. App'x at 261.

6

Mark Timmerman, HVCU's vice president of legal, corporate compliance and risk, explained in an affidavit that in October 2019 HVCU converted to a new online banking system. To use HVCU's online banking services, users must first register their accounts online. Registration requires that users first click through and agree to various HVCU disclosures including an "Internet Banking Disclosure and Agreement" ("Internet Banking Agreement").

The Internet Banking Agreement states in relevant part:

> If you do not agree to the terms of this Agreement do not access or use the Internet Banking services. If you remain on the site, or return thereafter, you agree to be bound by this Agreement . . . We may change terms or amend this Agreement from time to time without notice or as otherwise provided by law . . . Each of your accounts at Hudson Valley Credit Union is also governed by the applicable account disclosures. Your use of the services is your acknowledgement that you have received these agreements and agree to be bound by them.

App'x at 290. The Internet Banking Agreement informs members that they are bound by the terms and conditions of, among other things, the Account Agreement and provides URLs to access the relevant agreements, which include a "Mandatory Arbitration" provision and "Class Waiver" provision:

7

By clicking "I agree to the above terms and conditions" you agree to be bound by the terms and conditions identified in this Agreement, the terms and conditions of HVCU's Electronic Funds Transfer Disclosure & Account Agreement, as amended, HVCU's Truth in Savings Disclosure & Account Agreement, as amended and other relevant agreements, all of which are incorporated herein by reference as though fully set forth. You may access our Electronic Fund Transfers Disclosure and Agreement at https://www.hvcu.org/ Personal/Resources/Account-Disclosures. You may access our Truth in Savings Disclosure and Account Agreement at https://www.hvcu. org/Personal/Resources/Account-Disclosures.

App'x at 287-88. Timmerman attested that Zachman first signed into the new online banking system on October 23, 2019. A user audit report reflects that Zachman registered and accepted the disclosures, including the Internet Banking Agreement, on October 23, 2019.

Zachman asserts that she was not aware HVCU revised the 2012 Account Agreement to add mandatory arbitration or class action waiver provisions. She also attested that she never searched for or viewed the Account Agreement on the HVCU website.

**B.    The District Court's Decision**

As a threshold matter, the district court considered whether it had the authority to determine if this matter was arbitrable. HVCU argued that the

8

question of arbitrability had been delegated to an arbitrator. The court, however, noted that "[i]t is well settled" that a district court, not an arbitrator, must determine whether a valid arbitration agreement exists. *Zachman v. Hudson Valley Fed. Credit Union*, No. 20 CV 1579 (VB), 2021 WL 1092508, at *4 (S.D.N.Y. Mar. 22, 2021) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)).

Next, the district court considered whether Zachman agreed to submit to arbitration any claims arising out of the agreement and waived her right to proceed with a class action. The district court held that HVCU failed to establish that Zachman had actual notice of the mandatory arbitration and class action waiver provisions. *Id.* at *5. The district court then considered whether Zachman was on inquiry notice of the mandatory arbitration and class action waiver provisions.

First, the district court noted that HVCU failed to demonstrate that Zachman's registration for online banking put her on inquiry notice of the provisions. *Id.* at *6. The district court found that HVCU "provides no visual aid or description of any layout or design of the webpages that a user sees when

9

registering for online banking services." *Id.* at *7. HVCU provided a copy of the Internet Banking Agreement but did not provide screenshots of the webpage(s) presenting the Internet Banking Agreement to online banking registrants. Reviewing this copy, the district court found that the "the hyperlink and language regarding the Account Agreement appear to be buried in the Internet Banking Agreement." *Id.* The district court concluded that HVCU "has failed to establish that [Zachman] was put on inquiry notice" and denied the motion to compel arbitration. *Id.* at *8.

Second, the court found that Zachman was not put on inquiry notice based on HVCU's publication of the revised Account Agreement to the HVCU website. *Id.* at *7. Finally, the district court found that Zachman's continued use of her debit card and checking account was insufficient to establish her assent to the terms of the modified agreement. *Id.* at *8.

HVCU appealed.[2]

---

[2] On May 10, 2021, the district court stayed the proceedings below pending HVCU's interlocutory appeal. *Zachman v. Hudson Valley Fed. Credit Union*, No. 20 CV 1579 (VB), 2021 WL 1873235, at *1 (S.D.N.Y. May 10, 2021).

**DISCUSSION**

We review a district court's denial of a motion to compel arbitration de novo.[3] *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). "The question of whether the parties have agreed to arbitrate is also reviewed *de novo* to the extent that the district court's conclusion was based on a legal determination, but findings of fact, if any, bearing on this question are reviewed under a 'clearly erroneous' standard." *Id.* at 118–19; *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) ("The determination of whether parties have contractually bound themselves to arbitrate a dispute—a determination involving interpretation of state law—is a legal conclusion also subject to *de novo* review. The findings upon which that conclusion is based, however, are factual

---

[3] Although HVCU moved to dismiss Zachman's complaint, a motion to dismiss based on an arbitration agreement may be treated as a motion to compel arbitration. *See Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139–40 (2d Cir. 2008). The motion must either "explicitly or implicitly ask[] the court to order arbitration." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). When a movant manifests an intent to compel arbitration, district courts have "treated motions to dismiss based on mandatory arbitration clauses as motions to compel arbitration." *Id.* at 230.

11

and thus may not be overturned unless clearly erroneous." (citation and internal quotation marks omitted)).

The district court must first determine whether an agreement to arbitrate exists between the parties. *Schnabel*, 697 F.3d at 118. The question of whether the parties agreed to arbitrate is determined by state contract law; here, the applicable agreements are governed by New York law. *Id*. Courts deciding motions to compel arbitration "apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). If, however, there is an issue of fact as to the making of the agreement for arbitration, then remand to the district court for a trial is necessary. 9 U.S.C. § 4; *Meyer*, 868 F.3d at 74.

On a motion for summary judgment, the court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings,

12

depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (second alteration in original) (internal quotation marks omitted). In deciding such a motion, we "draw[] all reasonable inferences in favor of the non-moving party." *Meyer*, 868 F.3d at 74.

**I.    Applicable Law**

**A.    Agreement to Arbitrate**

In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate. *Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 25 (2d Cir. 1996). Only if the court concludes an agreement to arbitrate exists does it determine (1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

Section 4 of the FAA provides, in relevant part, that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the

13

trial thereof." 9 U.S.C. § 4. The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. *See, e.g., Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 254 (2d Cir. 2019) (vacating the denial of a motion to compel arbitration for the district court to consider unresolved issues regarding contract formation); *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945) (noting that the parties seeking a stay in favor of arbitration "supported their application . . . by showing at least prima facie that" an agreement to arbitrate was proposed and accepted); *see also Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 675 (2d Cir. 1972) (describing the evidence included in the initial petition of the party seeking to compel arbitration). This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed. *See Doctor's Assocs., Inc.*, 934 F.3d at 251. Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to "show[] the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).

14

## B. Inquiry Notice

"It is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (internal quotation marks omitted). "Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Id.* (emphases in original). "In determining whether an offeree is on inquiry notice of contract terms, New York courts look to whether the term was obvious and whether it was called to the offeree's attention." *Id.* at 289. "This often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.*

We apply these same contract law principles to online transactions. "In the context of web-based contracts, we look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Id.; see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021)

("Reasonable conspicuousness turns on the design and content of the relevant interface." (internal quotation marks omitted)). "We have emphasized that '[c]lassification of web-based contracts alone . . . does not resolve the notice inquiry,' and '[i]nsofar as it turns on the reasonableness of notice, the enforceability of a web-based agreement is clearly a fact-intensive inquiry.'" *Id.* (quoting *Meyer*, 868 F.3d at 76).

**II.    Application**

**A.    Agreement to Arbitrate**

We conclude that the record is insufficiently developed on the issue of whether the parties entered into an agreement to arbitrate and, as a consequence, we cannot determine the matter of arbitrability "as a matter of law." *Meyer*, 868 F.3d at 74. Therefore, we remand for the district court to consider further evidence or, if necessary, hold a trial. *See* 9 U.S.C. § 4; *Meyer*, 868 F.3d at 74 ("If a factual issue exists regarding the formation of the arbitration agreement, however, remand to the district court for a trial is necessary.").

Drilling down on that record, HVCU provided evidence that Zachman registered as an online banking user on October 23, 2019. This meant that when

16

Zachman signed up for internet banking, she first had to read or scroll through the Internet Banking Agreement, and then click a button at the bottom of the Agreement stating, "I agree to the above terms and conditions." App'x at 287 ¶ 6.

The Internet Banking Agreement was a "clickwrap" or a "scrollwrap" agreement. We have consistently upheld such agreements because the user has affirmatively assented to the terms of the agreement by clicking "I agree" or similar language. *See, e.g.*, *Meyer*, 868 F.3d at 75. For her part, Zachman does not dispute that she signed up for internet banking. *See* App'x at 273 ¶ 5 ("Since opening my account with Hudson, I have not visited Hudson's website for any purpose other than to conduct online banking activity, including reviewing my banking statements, and to inquire about an automobile loan."). That, however, does not end our analysis. When it comes to digital contract formation, courts also evaluate visual evidence that demonstrates "whether a website user has actual or constructive notice of the conditions." *Nicosia*, 834 F.3d at 233. The outcome often turns on "whether the design and content of th[e] webpage rendered the existence of terms reasonably conspicuous." *Id.*

17

Here, HVCU did not submit evidence of how the Internet Banking Agreement was presented to users. *See Zachman*, 2021 WL 1092508, at *7 ("[D]efendant provides no visual aid or description of any layout or design of the webpages that a user sees when registering for online banking services."). As a result, the district court could not resolve whether Zachman was on inquiry notice because, as it noted, it was "unable to assess whether the relevant language and hyperlink are clear and conspicuous." *Id.*; *see also Nicosia*, 834 F.3d at 233 ("Whether there was notice of the existence of additional contract terms presented on a webpage depends heavily on whether the design and content of that webpage rendered the existence of terms reasonably conspicuous.").

Accordingly, we agree with the district court that granting HVCU's motion to compel arbitration was not warranted in light of this evidentiary gap in the record.

However, we have remanded cases for trial on the issue of contract formation where the record was insufficiently developed. *See, e.g.*, *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 5 (2d Cir. 1981) (record consisted of affidavits and other papers); *Interocean Shipping*, 462 F.2d at 676

18

(record consisted of pleadings, affidavits, and documentary attachments). In contrast, where the parties conducted sufficient discovery and developed an ample record, we have decided the issues of reasonable notice and objective manifestation of assent as a matter of law. *See Specht*, 306 F.3d at 28.

Given the district court's finding that HVCU failed to meet their evidentiary burden, the district court's conclusion that "the hyperlink and language regarding the Account Agreement appear to be buried in the Internet Banking Agreement," *Zachman*, 2021 WL 1092508, at *7, is surprising. The district court may have been evaluating the copy of the Internet Banking Agreement that HVCU submitted and commenting on the nature of the text's reference to the Account Agreement. Nonetheless, its conclusion that the hyperlink and language regarding the Account Agreement are "buried" in the Internet Banking Agreement seems inconsistent with its finding that it was "unable to assess whether the relevant language and hyperlink are clear and conspicuous." *Id.* The district court could not have concluded the reference to the Account Agreements was not conspicuous or buried simply based on reading the copy of the contract

19

attached to Timmerman's affidavit without knowing the design and content of the webpage and how the terms were presented.

The record in this case is insufficiently developed for us to determine whether Zachman was placed on inquiry notice of the amended Account Agreement containing the mandatory arbitration and class action provisions when she began to use HVCU's internet banking site. Therefore, the district court's outright denial of the motion to compel arbitration, which had the effect of determining that Zachman is not bound by the amended Account Agreement's arbitration clause, was premature; the record was not sufficiently developed to indicate whether Zachman knowingly agreed to the arbitration clause. Given the lingering issues as to the matter of arbitrability, the district court should have required further evidence or proceeded to trial on that issue. *See Meyer*, 868 F.3d at 74.

**B. Incorporation by Reference**

We write further to bring to the district court's attention our precedents regarding inquiry notice in the context of web-based contracts in New York. Under New York law, it is well established that contract terms and other

20

agreements may be incorporated by cross-reference. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (citing *Chiacchia v. Nat'l Westminster Bank USA*, 507 N.Y.S.2d 888, 890 (1986)). This case presents a unique question regarding whether and how to address incorporation by reference in web-based contracts under New York law.

Under our precedents regarding inquiry notice of terms in web-based contracts, a district court must consider the design and content of the relevant interface. *Nicosia*, 834 F.3d at 233. To the extent that a second agreement is clearly incorporated by reference into a scrollwrap or click-through agreement, ordinary principles of contract interpretation and incorporation by reference under New York law must still apply.

If the Internet Banking Agreement was provided to Zachman on paper and she received hard copies of the Account Agreements, there is little doubt she would be bound by the terms in the Account Agreements if she signed the Banking Agreement. Applying that logic to the situation here, we would consider whether the Account Agreements were "clearly identified" in the scrollwrap Internet Banking Agreement and made accessible to the user.

21

*PaineWebber*, 81 F.3d at 1201. If so, then "as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement," *Meyer*, 868 F.3d at 75 (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016)), clicking "I agree to the above terms and conditions" would have bound Zachman to the Internet Banking Agreement along with the Account Agreements incorporated by reference.

Unfortunately, the record does not contain screenshots of the webpage(s) used to register HVCU customers for online banking. Therefore, we cannot engage in this analysis, and it was error for the district court to engage in the inquiry notice analysis based on the copy of the Internet Banking Agreement, which does not depict the content and design of the webpage as seen by users signing up for online banking. On remand, the district court should consider the design and content of the Internet Banking Agreement as it was presented to users in determining whether Zachman assented to its terms. And the district court should assess whether the Account Agreements are clearly identified and available to the users based on our precedents.

22

## CONCLUSION

For the reasons given above, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.