22-3193-cv
Lipsett v. Popular Bank

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of January, two thousand twenty-four.

PRESENT: ROBERT D. SACK,
RAYMOND J. LOHIER, JR.,
MARIA ARAÚJO KAHN,
*Circuit Judges.*

-------------------------------------------------------------------

FRANKIE LIPSETT, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellee,*

v.                                                                No. 22-3193-cv

POPULAR BANK,

*Defendant-Appellant.*[*]

-------------------------------------------------------------------

[*] The Clerk of Court is directed to amend the caption as set forth above.

FOR DEFENDANT-APPELLANT:            MICHAEL Y. KIEVAL, Weiner
                                    Brodsky Kider PC,
                                    Washington, DC

FOR PLAINTIFF-APPELLEE:             SUE JUNG NAM (Sophia Goren
                                    Gold, Kaliel Gold PLLC,
                                    Washington, DC, *on the brief*),
                                    Reese LLP, New York, NY

Appeal from an order of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the District Court is AFFIRMED.

Defendant Popular Bank (or the "Bank") appeals from a December 9, 2022 order of the United States District Court for the Southern District of New York (Marrero, *J.*) denying its motion to compel arbitration of claims filed by Plaintiff-Appellee Frankie Lipsett. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

"We review a district court's denial of a motion to compel arbitration de novo." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 100 (2d Cir. 2022). "The threshold question of whether the parties indeed agreed to arbitrate is

2

determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Here, the parties agree that New York law applies.

In holding that Lipsett was not required to arbitrate his dispute with Popular Bank, the District Court focused primarily on Lipsett's inability to opt out of arbitration. We need not address this issue, however. Instead, we affirm on the sole basis that Lipsett did not receive sufficiently clear notice that he was bound by the arbitration provision at issue in this case, as required under New York law. We are "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) (quotation marks omitted). We do so here.

"It is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (quotation marks omitted). Under New York law, the "manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* at 289. "Impenetrable vagueness and uncertainty will not do." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981).

3

Where the requested assent is largely passive, courts focus on whether the terms were "reasonably communicated to the user." *Starke*, 913 F.3d at 289 (quotation marks omitted). The party seeking to compel arbitration bears the initial burden of demonstrating the existence of an agreement to arbitrate. *Zachman*, 49 F.4th at 101–02.

Lipsett opened his account in 2004 under terms and conditions that did not include an agreement to arbitrate. The Bank contends that Lipsett is required to arbitrate under the Bank's 2008, 2013–14, and 2021 updates to its account terms and conditions, all of which include an arbitration provision. But the Bank conceded at oral argument that it produced evidence demonstrating that, of these documents, Lipsett was mailed only the 2013–14 Agreement, along with an attached notice letter (the "2014 Notice"). Accordingly, only the 2013-14 documents can give rise to a contract to arbitrate in this case.

It is true that no evidence was presented that Lipsett read the 2013–14 materials. But we have held that where an offeree lacks "*actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke*, 913 F.3d at 289. Whether an individual

4

is on inquiry notice "turns on whether the contract terms were presented to the offeree in a clear and conspicuous way," *id.*, taking into account the "totality of the circumstances," *id.* at 297.

We conclude that, for an existing customer in Lipsett's circumstances, the 2014 Notice and the 2013–14 Agreement's arbitration provisions are insufficiently clear or conspicuous to represent a "definite offer" to arbitrate this dispute. *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999); *see Starke*, 913 F.3d at 289. While the 2014 Notice draws attention to the arbitration provision, it misleadingly states that there "*continues* to be a Mandatory Arbitration Provision." Joint App'x 159 (emphasis added). This statement signals to a reasonable customer like Lipsett, who was not previously informed of the arbitration provision or consented to arbitration and therefore not bound by any previous iteration of the arbitration provision, that it does not apply to him and that his agreement with the Bank remained effectively unchanged. *See Express Indus. & Terminal Corp.*, 93 N.Y.2d at 589 (requiring an "objective meeting of the minds" before finding a binding and enforceable contract). The 2014 Notice renders the arbitration provision *less* conspicuous. *See Starke*, 913 F.3d at 289.

5

The 2014 Notice also fails to clearly notify Lipsett about the terms on which he could accept or decline the arbitration provision. The 2014 Notice provides only one avenue for Lipsett to reject the updates included in the 2013–14 Agreement: by rejecting the agreement in its entirety by means of closing his account and withdrawing his funds from the Bank within sixty days. According to the 2014 Notice, Lipsett would be considered to have accepted the changes if he used his account after five days from the date of the notice. These terms differ significantly from the language of the 2013–14 Agreement, which provides that if Lipsett is an "existing customer" asked to "enter into a new deposit agreement," he would be able to reject the arbitration provision *without* having to close his bank account. Joint App'x 167. The text of the 2013–14 Agreement does not suggest that Lipsett would be bound by the arbitration provision if he used his account more than five days after receiving the agreement.

Lastly, the 2014 Notice does not clearly state whether the 2013–14 Agreement was an entirely "new" deposit agreement or merely one that amended Lipsett's prior agreements. The 2014 Notice states both that the enclosed agreement "replace[d]" prior agreements and that the 2013–14 Agreement is an "Amended Account Agreement," which merely includes

"changes" and "[m]odifications," rather than a new agreement. Joint App'x 159. This ambiguity is reinforced by the fact that the Bank argues that its 2021 Agreement, which contains a near-identical arbitration opt-out provision, was *not* a new deposit agreement, while maintaining that the 2013–14 Agreement provided to Lipsett *was* a new agreement. A reasonable customer would not be sufficiently aware of which of these opt-out provisions governs.

In sum, the specific language of the 2013-14 materials does not permit existing accountholders like Lipsett to clearly understand their options for rejecting arbitration. Under the totality of the circumstances contained in this record, therefore, we conclude that Lipsett has not assented to mandatory arbitration under New York law. This analysis may not be the same for individuals who, unlike Lipsett, had received notice of Popular Bank's account changes and previously consented to arbitrate.

We have considered Popular Bank's remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7